ORIGINAL

ALSTON HUNT FLOYD & ING
Attorneys at Law
A Law Corporation

LOUISE K. Y. ING          2394
BRANDON M. SEGAL          9207
1001 Bishop Street
Suite 1800
Honolulu, Hawai'i  96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
E-mail: ling@ahfi.com
        bsegal@ahfi.com

Attorneys for Plaintiffs
WER1 WORLD NETWORK and
INGRID WANG

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 24 2011

at 4 o'clock and 00 min. P. M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WER1 WORLD NETWORK, a Hawaii corporation; and INGRID WANG, individually,<br><br>          Plaintiffs,<br><br>     vs.<br><br>CYBERLYNK NETWORK, INC., a Wisconsin corporation; MICHAEL SCOTT JEWSON, individually; JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, and DOE ENTITIES 1-10,<br><br>          Defendants. | Case No. CV11-00195 DAE RLP<br><br>**COMPLAINT;** DEMAND FOR JURY TRIAL; SUMMONS |

767630v1/10123-1

## COMPLAINT

Plaintiffs WER1 WORLD NETWORK ("WeR1") and INGRID WANG (collectively, "Plaintiffs"), by and through their counsel, Alston Hunt Floyd & Ing, bring this Complaint against Defendants CYBERLYNK NETWORK, INC. ("CyberLynk"), MICHAEL SCOTT JEWSON ("Jewson"), and JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, and DOE ENTITIES 1-10 (collectively, "Defendants"), and in support thereof alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for breach of contract, negligence, and intentional tort to obtain damages arising out the intentional destruction of WeR1's valuable electronic data which was hosted on CyberLynk's computer servers.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the controversy is between citizens of different States and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

3.     Venue is appropriate in this Court under 28 U.S.C. § 1391(a) because, on information and belief, one or more Defendants transacts business within this State and is subject

to the personal jurisdiction of this State at the time this action is commenced.

## PARTIES

4.    Plaintiff WeR1 is, and at all relevant times was, a citizen of the State of Hawai'i as a corporation duly organized and existing under the laws of the State of Hawai'i, with its principal place of business in Hawai'i.

5.    Plaintiff Ingrid Wang is, and at all relevant times was, a citizen of the State of Hawai'i with her principal place of residence in Hawai'i.

6.    Defendant CyberLynk is, and at all relevant times was, a citizen of the State of Wisconsin, being a corporation duly organized and existing under the laws of the State of Wisconsin, with its principal place of business at 10125 S. 52nd Street, Franklin, WI 53132.

7.    Upon information and belief, Defendant Jewson is, and at all relevant times was, an individual and a citizen of Wisconsin.

8.    Defendants JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, and DOE ENTITIES 1-10 (collectively, "Doe Defendants") are not citizens of Hawai'i and are being sued under fictitious names because, despite diligent and good faith efforts, their true names and identities are presently unknown to Plaintiffs, except that they are or were

connected in some manner with the above-named Defendants and/or
agents, principal partners, officers, directors, servants,
employees, employers, representatives, co-venturers, associates,
consultants, vendors, suppliers, subcontractors, contractors
and/or employees working at the direction of the above-named
Defendants, or in some manner presently unknown to Plaintiffs,
are or were engaged in the activities alleged and/or were in
some manner responsible for the injuries and/or damage to
Plaintiffs and/or in some manner are or may be related to and
jointly liable with the above-named Defendants. Plaintiffs pray
for leave to certify the true names, identities, capacities,
activities and/or responsibilities of such Doe Defendants when,
through further discovery in this case, the same are
ascertained.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

### WeR1 World Network and the FTP Hosting Account with CyberLynk

9.    Plaintiff WeR1 creates and distributes children's
television entertainment; it also focuses on other merchandise
and multimedia products such as learning software and
educational games.

10.    Plaintiff Ingrid Wang is the CEO, founder, and
owner of WeR1.  She has invested significant personal funds in
WeR1, including funding of WeR1's recovery efforts after loss of
the WeR1 electronic data which is the subject of this Complaint.

11.   WeR1 produced the animated/live action
educational children's show "Zodiac Island." Its first season
was in 2008-2009, and 14 finished episodes were produced. Zodiac
Island was broadcasted on over 100 U.S. TV stations, including
on ABC, NBC, CBS, and FOX affiliates.

12.   Production of each episode is a global project:
for example, pre-production is done in the U.S., animation is
done in Manila and Beijing, music is done in Hong Kong & Manila,
and post-production is done in California.

13.   Defendant CyberLynk is an internet service and
data hosting provider with headquarters in Franklin, WI.  Its
main data center is located in Milwaukee, WI, but on information
and belief, it advertises and offers its online hosting services
to potential customers all over the United States, including
Hawai'i. Defendant CyberLynk holds itself out be a "a full
service Internet Service provider that has thousands of
customers world-wide" and offers datacenter connections wired
into the "internet backbone" in order for all world-wide
customers to get the fastest connections to transfer and
exchange files.

14.   Defendant CyberLynk does commercial business over
the internet, by eliciting sales from customers, including
customers from Hawai'i, to sign up for an FTP hosting account
using an interactive form on CyberLynk's website.  CyberLynk's

website then allows for the transfer or exchange of files to the hosting account using interactive tools on CyberLynk's website.

15.   Defendant CyberLynk advertised its FTP hosting services as a means for a secure, centralized backup of files. Defendant CyberLynk also represented on its website that its internet services were "reliable" and would "allow the customer to focus on their core business."

16.   On or about April 12, 2008, Dr. Bernard Yaged ("Dr. Yaged"), the then Chief Financial Officer of WeR1, and acting on behalf of WeR1, opened a FTP hosting services account with Defendant CyberLynk through CyberLynk's website (the "FTP Hosting Account").

17.   The purpose of opening the FTP Hosting Account was to provide WeR1 with a secure, centralized backup of electronic data associated with Zodiac Island's globally dispersed production, including animation files, storyboards, sound tracks, and videos.

18.   Before deciding to select CyberLynk, Dr. Yaged had researched companies offering online hosting services by reviewing information and services about the various companies, including CyberLynk, on the companies' websites.  Based on CyberLynk's representations and promises on its extensive website about its longevity, experience, track record, high-quality and hardworking personnel, location in an area with good

connectivity, customer service orientation, and data backup
services, WeR1 decided on CyberLynk as its vendor to securely
store and distribute its electronic files world-wide.

19.   Thus, Dr. Yaged's understanding of the terms of
the FTP Hosting Account agreement and services offered by
CyberLynk as of April 2008 and throughout 2009 until the
occurrence that is the subject of this Complaint was that
Defendant CyberLynk would provide a secure, safe hosting server,
and that Defendant CyberLynk would periodically and regularly
back up all data hosted on the CyberLynk server for protection
in the event of server failure or data loss.

20.   Before retaining Defendant CyberLynk as WeR1's
provider of FTP hosting services, Dr. Yaged did not see any
provisions limiting CyberLynk's liability or exposure to
damages.  Had he seen such provisions, he would not have
selected CyberLynk.

21.   Ingrid Wang, as CEO, owner, and major investor in
WeR1, was also an intended third-party beneficiary of this
agreement, which was purposed in part to allow the owner and
employees of WeR1 to "focus on their core business."

### The Intentional Destruction of WeR1's Valuable Data

22.   At least 6,480 WeR1 electronic files, totaling
over 500 directories and 300 gigabytes, were hosted on the FTP
Hosting Account server by March 13, 2009.  This was an

accumulation of two years of work that included animation artwork and live action video production, with contributions from several hundred people and over three dozen companies in the United States and Asia.

23.  On or about March 26, 2009, there was a loss of approximately 304 gigabytes of WeR1's data located on the FTP Hosting Account server.

24.  This loss was a result of grossly negligent or intentional actions by Defendant Jewson, who -- according to Defendant CyberLynk -- was a former employee of CyberLynk who was fired on or about February 27, 2009.

25.  Upon information and belief, on March 26, 2009, Defendant Jewson, using a computer located at his parents' residence in Wisconsin, accessed Defendant CyberLynk's data servers without authorization and then intentionally and deliberately deleted electronic data, including approximately 304 gigabytes of WeR1's valuable data, without WeR1's permission or knowledge.

26.  As a result of his actions, Defendant Jewson was charged on or about February 9, 2011 with a violation of 18 U.S.C. § 1030(a)(5)(B) and (c)(4)(A)(i)(I), in *United States of America v. Michael Scott Jewson*, Case No. 2:11-CR-00037-JPS, in the United States District Court - Eastern District of Wisconsin.

27.  On or about February 9, 2011, Defendant Jewson entered into a plea agreement, whereby he admitted to his guilt with respect to the aforementioned charges.  The plea agreement has not been approved by the court. Although the plea agreement includes a provision for restitution to WeR1, the proposed amount of restitution does not cover all of Plaintiffs' losses caused by the wrongful destruction. Moreover, Plaintiffs are informed and believe that Defendant Jewson does not have the resources to pay the amount of proposed restitution.

28.  Adam Hobach, President of CyberLynk, admitted to WeR1 that CyberLynk's security procedures and policies had failed and/or were inadequate to prevent Defendant Jewson's unauthorized actions.

29.  Adam Hobach also admitted that CyberLynk's backup procedure had failed and/or was not properly instituted, and therefore CyberLynk was unable to recover all of WeR1's data.

30.  WeR1 (including Ingrid Wang and Dr. Bernard Yaged) immediately undertook extensive efforts and incurred great expense to assess damage and to recover the lost data. This included travel to WeR1 and third-party offices in Hong Kong, Beijing, and Manila to locate any backups of files related to WeR1's production efforts.  WeR1 also meticulously inventoried and cross-checked the files it was able to recover with directory listings from CyberLynk's FTP server.

31.   Despite WeR1's diligent efforts and expenses incurred, WeR1 has been unable to date to recover at least 21% of the data which was hosted on CyberLynk's servers (approximately 64 gigabytes). It appears this data has been permanently destroyed. Because this destroyed data includes fragments from each of the fourteen episodes, it is now impossible to re-assemble any of the episodes in its entirety.

32.   The loss of such a large amount of important data has been devastating to WeR1.  The data spanned an entire season of show production, constituting fourteen episodes.  The majority of the destroyed data was creative work produced by animation companies, script writers, directors, producers, songwriters, actors, and other talents, which is extremely difficult and expensive, if not impossible, to reproduce.

33.   Ingrid Wang also suffered serious damages as a result of the loss.  This includes lost salary and the cost of additional investments in WeR1 while engaging in and in order to fund the recovery efforts of data, personal expenses incurred while attempting to restore and inventory data, as well as a depreciation of her significant personal investments in WeR1.

## FIRST CLAIM FOR RELIEF -  BREACH OF CONTRACT

### (Against Defendant CyberLynk)

34.  Plaintiffs reallege and incorporate by reference all previous allegations and paragraphs as if fully set forth herein.

35.  Through the actions described above, including Defendant CyberLynk's failure to effectively perform regular site backup of the data in the FTP Hosting Account server in order to preserve critical data, and Defendant CyberLynk's failure to take proper security precautions to prevent foreseeable security breaches by terminated employees, such as the unauthorized entry and destruction of data by Defendant Jewson, Defendant CyberLynk breached the agreement between the parties.

36.  As a result of Defendant CyberLynk's breach of contract, Plaintiffs have suffered and continue to suffer substantial harm, injury, general and special damages, and expenses of pursuing its contractual rights, including attorneys' fees, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF - NEGLIGENCE

### (Against Defendant CyberLynk)

37.  Plaintiffs reallege and incorporate by reference all previous allegations and paragraphs as if fully set forth herein.

38.   In providing FTP hosting services to WeR1 for WeR1's valuable electronic data, Defendant CyberLynk owed a duty to Plaintiffs to, among other things, take proper precautions to prevent the loss of data, including a duty to perform regular and effective site backup of the hosting server in order to preserve critical customer data, and to take proper security precautions to prevent foreseeable security breaches such as the unauthorized entry and destruction of data by employees, especially former employees such as Defendant Jewson, and other persons.

39.   Defendant CyberLynk breached its duties to Plaintiffs by, among other things, failing to back up WeR1's data files as promised and to prevent security breaches and destruction of its data.

40.   As a proximate result of Defendant CyberLynk's breach of its duties to Plaintiffs, Plaintiffs have suffered and continue to suffer substantial harm, injury, general and special damages, in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF - CONVERSION

### (Against Defendant Jewson)

41.   Plaintiffs reallege and incorporate by reference all previous allegations and paragraphs as if fully set forth herein.

42.   On or about March 26, 2009, Defendant Jewson intentionally controlled and/or took possession of property, specifically, electronic data hosted on the FTP Hosting Account server, which belonged to WeR1, and without WeR1's consent.

43.   Defendant Jewson deliberately and permanently destroyed WeR1's electronic data, resulting in serious interference with WeR1's rights to possess the electronic data.

44.   Therefore, Defendant Jewson converted WeR1's personal property without WeR1's consent, and committed the intentional tort of conversion.

45.   As a result of Defendant Jewson's actions, Plaintiffs have suffered and continue to suffer substantial harm, injury, and damages, in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF –

### COMPUTER FRAUD AND ABUSE ACT, 18 USC § 1030(a)(5)(B)

### (Against Defendant Jewson)

46.   Plaintiffs reallege and incorporate by reference all previous allegations and paragraphs as if fully set forth herein.

47.   Defendant Jewson intentionally and without authorization accessed a protected computer, to wit, CyberLynk's FTP hosting servers, which were used in or affected interstate commerce.

48.   As a result of such actions, Defendant Jewson recklessly caused damage to Plaintiffs.   Defendant Jewson's intentional and unauthorized actions resulted in a loss to one or more persons (including Plaintiffs) during a one-year period, aggregating at least $5,000 in value.

49.   The resulting losses to Plaintiffs include: the cost of conducting damage assessments, such as inventorying the data and traveling to recover data from WeR1 offices located in different countries; attempts to restore this data to its condition prior to Defendant Jewson's intentional and unauthorized act; and revenue lost -- as well as other consequential damages -- from Plaintiffs' inability to use this data to produce other related products, such as websites, educational software, media, and to build the Zodiac Island brand.

50.   Plaintiffs are entitled to maintain a private cause of action against Defendant Jewson under 18 U.S.C. § 1030(g), and Defendant Jewson is liable to Plaintiffs for general and special damages, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them, jointly and severally, as follows:

1.   For general and special damages according to proof at trial;

2.    For attorneys' fees, costs, interest, and
expenses; and

3.    For such other and further relief that the Court
may deem just, equitable, or appropriate.

DATED: Honolulu, Hawai'i, March 24, 2011.

_____
LOUISE K. Y. ING
BRANDON M. SEGAL
Attorneys for Plaintiffs
WER1 WORLD NETWORK and INGRID WANG